### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

TRAVELODGE HOTELS, INC.,

      Plaintiff,

vs.                                                                                          No. CIV 02-1560 MV/WDS

KALI LIMITED, a New Mexico Limited
Liability Company, JASH H. JAISWAL, an
individual, WILLIAM TERRANOVA, an
individual,

      Defendants.

KALI LIMITED, a New Mexico Limited
Liability Company, JASH H. JAISWAL, an
individual,

      Counter Claimants,

vs.

TRAVEL LODGE HOTEL, INC.,

      Counter Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff/Counter-Defendant Travelodge Hotel Inc.'s Motion to Enforce Settlement Agreement, filed October 29, 2004, **[Doc. No. 65]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.

## BACKGROUND

In 1999, Travelodge Hotels, Inc., ("Travelodge" or "THI") and Kali Limited ("Kali") entered into a license agreement permitting Kali to operate its guest lodging facility located in Hobbs, New Mexico, as a Travelodge Hotel (the "License Agreement"). The two principals of Kali, William Terranova ("Terranova") and Jash Jaiswal ("Jaiswal"), guaranteed Kali's performance and obligations under the License Agreement. Jaiswal also owns a guest lodging facility in Mesa, Arizona that he operates as a Days Inn pursuant to a license agreement with Travelodge's sister corporation, Days Inns Worldwide, Inc., (the "Mesa Days Inn License Agreement"). The Mesa Days Inn License Agreement is for a term of fifteen years, ending on October 7, 2012, with a contingent early termination right at ten years.[1]

In 2001, Travelodge terminated the License Agreement and Kali's right to operate the Hobbs hotel as a Travelodge due to Kali's alleged breach of the License Agreement. Travelodge subsequently commenced this action against Kali, Terranova, and Jaiswal alleging, in part, trademark infringement, unjust enrichment and breach of contract. On November 6, 2003, Kali

---

[1] Paragraph 18.2 of the Mesa Days Inn License Agreement provides that:

You may terminate the License without cause or penalty effective only on the tenth anniversary of the Opening Date provided you give us at least six (6) months prior written notice of termination and you are not in default under this Agreement at the time notice must be given or at the effective date of termination. You will pay no Liquidated Damages if you comply with the preceding sentence and you perform the post termination obligations specified in this Agreement within 10 days after the effective date of termination. Your rights under this Section will automatically terminate without notice if and as of the date (i) a Termination occurs, (ii) you fail to cure any default under this Agreement within the time permitted, if any, in the notice of default we send you, or (iii) after the Facility satisfies the Improvement Obligation, the Facility scores less than 425 (or its then equivalent ) in a reinspection to be performed no sooner than 30 days after the initial inspection.

and Jaiswal proposed settlement of Travelodge's claims in this case in exchange for an extension of the term of the Mesa Days Inn License Agreement:

> Since Cendant's[2] last demand at the settlement conference was $130,000, and since Cendant was, at least according to the mediator, apparently willing to enter into some form of agreement for payments to be made in the future, my clients' proposal is an offer to extend the Day's Inn franchise for another 2 ½ years beyond the original term of the agreement that he assumed. He informs me that he pays Cendant approximately $55,000 a year in royalty fees. Multiplied times 2 ½ years of additional revenue, this comes to $137,500 in additional monetary payments to Cendant. This would prevent my client from having to file for bankruptcy protection, and at the same time give Cendant the amount of money they wanted, albeit somewhat delayed. I suspect that over time, as room rates increase over time, this could also substantially increase the royalty fees to Cendant. If accepted, this would settle any and all claims that Cendant and/or Travelodge has against my clients (Jaiswal & Kali L.L.C.) arising out of their dealings to date and any and all claims my clients have against Cendant and or Travelodge.

November 6, 2003 Letter from Josh A. Harris to Janet Weinstein Lord.

On December 16, 2003, Travelodge countered with a proposal that included extending the term of the Mesa Days Inn License Agreement by three years and waiving the early termination provision:

> 1.    Mr. and Mrs. Jaiswal will consent to extending the term of their License Agreement for their Mesa, AZ Days Inn (Site 1789) for an additional three years (through October 7, 2015) and also agree to waive their early termination window as provided in paragraph 18.2 of that License Agreement.
>
> * * *
>
> This will be accomplished by a short amendment to the Days Inn License Agreement.

December 16, 2003 email from Janet Weinstein to Josh Harris.

---

[2] Cendant is Travelodge's corporate parent.

On January 12, 2004, Defendants agreed to several of Travelodge's proposed terms, including extending the Mesa Days Inn License Agreement for three years and waiving the early termination clause, and made counteroffers on the other terms:

> My client is willing to settle the claims filed against him, and those claims he filed against Travelodge pursuant to the following terms:
>
> 1. Three (3) year extension of the Days Inn license agreement. (Expected value to Cendant is $165,000--up from 2 ½ years or $137,500).
>
> 2. Jaiswal will agree to waive the early termination clause. (Term requested by Cendant).
>
> * * *

January 12, 2004 Letter from Josh Harris to Janet Weinstein Lord.

In its response, Travelodge noted that the parties had agreed to extending the term of the Mesa Days Inn License Agreement for three years and to waiving the early termination window:

> The parties appear agreeable to extending the term of the Jaiswal's Mesa Days Inn (Site 1789) for an additional three years (through October 7, 2015); to waiving the early termination window as provided paragraph 18.2; and, to eliminating the early transfer provision in paragraph 18.1.

January 30, 2004 email from Janet Weinstein to Josh Harris. Travelodge made counteroffers on the various other terms, including the amount and timing of payments to Travelodge and the amount of a stipulated judgment. *Id.*

Kale and Jaiswal found all of the terms in Travelodge's proposal acceptable except the monetary payment:

> My client has considered your latest demand, and is willing to settle the claims filed against him, and those claims he filed against Travelodge pursuant to the terms you suggest in your latest letter, however, he can not [sic] afford the cash portion of the deal, and instead would counter with payment of $6,000 to be paid when the agreement is reached, and another $6,000 in May 2004.

January 17, 2004 Letter from Josh Harris to Janet Weinstein Lord.[3]

The parties continued negotiating the amount and timing of the proposed payments. On March 2, 2004, Defendants agreed to the amount and number of monetary payments proposed by Travelodge but proposed a different payment schedule:

> [My client] has considered your latest demand, and is willing to settle the claims filed against him, and those claims he filed against Travelodge pursuant to the terms you suggest in your latest letter, however, under the following payment schedule:  Three payments of $6,000 each, the first to be paid 1) when this agreement is executed; 2) then on December 30, 2004; and 3) the last on February 28, 2005.
>
> I have not restated all of the other terms that have been memorialized along the way during the negotiations, so if you believe you are not clear on what other terms are necessary for settlement, please let me know.  Otherwise, I would appreciate it if you would pass this offer on to your client and let me know their response.

March 2, 2004 letter from Josh Harris to Janet Weinstein Lord.

Two days later, Travelodge emailed Defendants that the modification of the timing of the payments was acceptable and that Travelodge would start drafting a final settlement agreement. On April 5, 2004, Travelodge sent Defendants a draft of the proposed settlement agreement. The draft settlement agreement stated, in paragraph 3, that "Mr. and Mrs. Jaiswal agree to extend their License Agreement with THI's affiliate, Days Inns Worldwide, Inc., for Site 1789, Mesa, Arizona ("Days Inn Site 1789 Agreement") for an additional three (3) years (through October 7, 2015) by executing an Addendum to the Days Inn License Agreement for Site 1789 identical to the form

---

[3] This letter appears to be misdated.  The letter is dated January 17, 2004, but it is responding to Travelodge's January 30, 2004 proposal and was received by Plaintiff's counsel on February 17, 2004.

attached hereto as Exhibit "B", and in accordance with the terms and conditions set forth in such Addendum."

In a letter dated April 30, 2004, Defendants requested changes to several of the provisions included in the settlement agreement but did not object to paragraph 3. Travelodge revised the settlement agreement in response to Defendants concerns and sent Defendants a revised settlement agreement on May 28, 2004. Paragraph 3 was not changed in the revised settlement agreement. On June 2, 2004, Travelodge emailed Defendants the proposed amendment to the Mesa Days Inn License Agreement, which provided, in part, that Defendants "agree to waive the rights contained in Section 18.2 of the License Agreement." On June 3, 2004, Defendants raised a concern about filing a judgment against him with the Court and requested that the judgment be held by Travelodge and only filed in the event of a default. Travelodge agreed to this request and sent Defendants a settlement agreement with the revised judgment provision.

On July 21, 2004, Defendants requested a few minor changes in the revised settlement agreement, none of which affected paragraph 3. Travelodge made the requested changes and sent a revised settlement agreement to Defendants on July 27, 2004. Defendants acknowledged receipt of the revised settlement agreement and requested a clean copy for signature:

> Hopefully that should wrap it up. If you would send me a version without all of the items crossed out, etc., and change the date to August, as it probably wont [sic] be signed until then, I will send it to my client immediately for his consideration and signature.

July 28, 2004 email from Josh Harris to Amy Abdo.

Travelodge sent the settlement agreement as well as a stipulated order dismissing the action to Defendants for signature on July 30, 2004. On August 6, 2004, Defendants' counsel

informed Travelodge that his client had the settlement agreement and was having his attorney in Arizona review it:

> [M]y client has the documents, and he is having his attorney in Arizona look them over. He tells me he should know by Tues or Wed of next week if he approves them. I suspect he will, but we need to wait to hear from him. I will contact you immediately once I hear from him. Thanks for your patience.

August 6, 2004 email from Josh Harris to Amy Abdo.

On September 22, 2004, Defendants raised two issues with the settlement agreement, including an objection to paragraph 3:

> My client and his attorney have pointed out the following problems. First, paragraph 3 entitled Extension of Term of Days Inn License Agreement states that with the three year extension the agreement is effective until Oct. 7, 2015. This does not appear to be correct. The license agreement was signed in 1997. According to paragraphs 18.2 and 18.3, either party may terminate witout [sic] cause effective on the 'tenth anniversary". [sic]  Thus, paragraphs [sic] 3 of the settlement agreement should read the agreement is effective until Oct. 7, 2010.

September 22, 2004 email from Josh Harris to Amy Abdo.

In response, Travelodge pointed out that Defendants had agreed to waive the early termination agreement:

> In as much as the parties agreed to waive the early termination provisions and the early transfer provisions, the term has been extended to 2015. In this regard, the 15 year term commenced in 1997 which takes it to 2012, plus the 3 year extension, brings it to 2015.

October 12, 2004 email from Amy Abdo to Josh Harris. Ultimately, Defendants refused to sign the settlement agreement, contending that they did not understand that they were waiving the early termination clause and would not agree to do so. Travelodge filed this motion to enforce the settlement agreement.

**DISCUSSION**

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).[4]  Issues involving the formation, construction and enforceability of a purported settlement agreement are resolved by applying state contract law. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).

New Mexico law favors the settlement of disputed claims, *Gonzales v. Atnip*, 102 N.M. 194, 692 P.2d 1343, 1344 (N.M. Ct. App.1984), and the settlement of a lawsuit will be enforced by the courts, *Bd. of Educ. v. Dep't of Pub. Educ.*, 1999-NMCA-156, ¶ 14, 128 N.M. 398, 993 P.2d 112.  A party may be bound by a settlement even if certain details are not worked out, if such details are not essential to the proposal or cause a change in the terms or purpose to be accomplished by the settlement. *Bogle v. Potter*, 72 N.M. 99, 380 P.2d 839 (1963).  In the absence of mutual mistake of fact, fraud, failure to express the agreement of the parties, or material breach by the other party, a contract may not be rescinded. *Rojo v. Loeper Landscaping, Inc.*, 107 N.M. 407, 410, 759 P.2d 194 (1988).

There is no question that as of March 4, 2004, the parties thought they had agreed on the essential terms of the settlement agreement.  Defendants contend, however, that they did not intend to extend the term of the Mesa Days Inn License Agreement until 2015 and therefore there was never mutual assent on a material term in the settlement agreement.  According to

---

[4] The Tenth Circuit has held that an evidentiary hearing may be required if material facts concerning the terms of a settlement agreement are in dispute. *See, e.g., Chicano Police Officer's Ass'n v. Stover*, 624 F.2d 127, 131-32 (10th Cir. 1980).  In this case, however, the material facts are undisputed.

Defendants, the parties agreed to a three-year extension of the Mesa Days Inn License Agreement but there was a mutual mistake with regard to the date of the termination of the agreement.  *See, e.g., Trujillo v. Glen Falls Ins. Co.*, 88 N.M. 279, 282, 540 P.2d 209 (1975) ("Where one party meant one thing and the other party meant another, the difference going to the essence of the supposed contract, the court will find no contract in law or equity unless the court should find that one party knew or had reason to know what the other party meant or understood.").  The undisputed evidence does not support Defendants' position.

Defendants' initial settlement proposal was based on extending the Mesa Days Inn License Agreement for 2 ½ years but did not specify the date they contemplated the agreement would terminate.  In its December 16, 2003 counter proposal, however, Travelodge requested a three-year extension, specifying the exact date through which the Mesa Days Inn License Agreement would be extended, and required that Jaiswal waive the contingent, early termination right provided by Paragraph 18.2:

> Mr. and Mrs. Jaiswal will consent to extending the term of their License Agreement for their Mesa, AZ Days Inn (Site 1789) for an additional three years (through October 7, 2015) and also agree to waive their early termination window as provided in paragraph 18.2 of that License Agreement.

On January 12, 2003, Defendants agreed to the three-year extension (without reference to a specific date) and agreed to waive the early termination provision:

> My client is willing to settle the claims filed against him, and those claims he filed against Travelodge pursuant to the following terms:
>
> 1. Three (3) year extension of the Days Inn license agreement.  (Expected value to Cendant is $165,000--up from 2 ½ years or $137,500).
>
> 2.  Jaiswal will agree to waive the early termination clause.  (Term requested by Cendant).

Travelodge's responding counteroffer explicitly noted that "[t]he parties appear agreeable to extending the term of the Jaiswal's Mesa Days Inn (Site 1789) for an additional three years *(through October 7, 2015)*" and "to waiving the early termination window as provided in paragraph 18.2." (emphasis added). Defendants' counsel's response stated that "[m]y client has considered your latest demand, and is willing to settle the claims filed against him, and those claims he filed against Travelodge pursuant to the terms you suggest in your latest letter, however, he can not [sic] afford the cash portion of the deal, and instead would counter with payment of $6,000 to be paid when the agreement is reached, and another $6,000 in May 2004."

Over the next several months, the parties continued negotiating other terms of the settlement with no further discussion of the extension of the term of the Mesa Days Inn License Agreement or of waiving the early termination window provided in paragraph 18.2. On March 4, 2004, the parties reached agreement on the remaining settlement terms and Plaintiff began drafting the settlement agreement.

On April 5, 2004, Travelodge sent Defendants a draft of the proposed settlement agreement. The draft settlement agreement stated, in paragraph 3, that "Mr. and Mrs. Jaiswal agree to extend their License Agreement with THI's affiliate, Days Inns Worldwide, Inc., for Site 1789, Mesa, Arizona ("Days Inn Site 1789 Agreement") for an additional three (3) years (*through October 7, 2015)* by executing an Addendum to the Days Inn License Agreement for Site 1789 identical to the form attached hereto as Exhibit "B", and in accordance with the terms and conditions set forth in such Addendum." (emphasis added).

Between April and July 2004, the parties exchanged several drafts of the written settlement agreement, each of which explicitly stated that the term of the Mesa Days Inn License

-10-

Agreement would be extended through October 7, 2015, and required Defendants to waive the early termination provision in the Mesa Days Inn License Agreement. Defendants' counsel submitted revisions and requested changes to the various drafts of the written settlement agreement but never once objected to this provision.

On July 27, 2004, Travelodge sent a final version of the settlement agreement to Defendants for signature. As with all previous versions, the settlement agreement stated that "Mr. and Mrs. Jaiswal agree to extend their License Agreement with THI's affiliate, Days Inns Worldwide, Inc., for Site 1789, Mesa, Arizona ("Days Inn Site 1789 Agreement") for an additional three (3) years (*through October 7, 2015*)." (emphasis added). On September 22, 2004, Defendants, for the first time ever, disputed that they had agreed to extend the Mesa Days Inn License Agreement until October 7, 2015.

As an initial matter, there is no evidence of a mutual mistake. A mutual mistake is when both parties intended something other than what is reflected in the contract. *See, e.g.*, Williston on Contracts § 70.9-10 (4th ed. 2003) ("A mutual mistake is generally one where both parties share the same misunderstanding as to the same material aspect of a contract."); *Cargill v. Sherrod*, 96 N.M. 431, 433, 631 P.2d 726 (1981) ("For a mistake to be mutual and common to both parties, it must appear that both parties have done what neither intended."). In this case, only Defendants assert that they intended a different date of termination than that reflected in the settlement agreement. Therefore, at most, there has been a unilateral, not a mutual, mistake. A settlement agreement is not void for lack of mutual assent when there is a unilateral mistake. *See Jacobs v. Phillippi*, 102 N.M. 449, 451-52, 697 P.2d 132 (1985). Under certain circumstances, however, a unilateral mistake may provide a basis to rescind a settlement agreement.

Under New Mexico law, there are various formulations of the law on setting aside a contract due to a unilateral mistake and, as noted by the New Mexico Supreme Court, "for every such formulation there is an equal and opposite reformulation." *Crown Life Ins. Co., v. Candlewood, Ltd.*, 112 N.M. 633, 638, 818 P.2d 411 (1991). At times the New Mexico Supreme Court has refused to void a contract for a unilateral mistake "except where the mistake is basic and material to the agreement, and the other party knew or reasonably should have known about the mistake." *Jacobs v. Phillippi*, 102 N.M. 449, 451-52, 697 P.2d 132 (1985); *see also* 17 Am.Jur.2d Contracts § 146 (1964) (unilateral mistake will not void a contract). In other cases, the New Mexico Supreme Court has refused relief for a party's unilateral mistake when the mistake is attributable to the party's own negligence in failing to exercise reasonable diligence. *See, e.g., Chaplin v. Korber Realty*, 29 N.M. 567, 224 P. 396 (1924) (in order for a party to a contract to obtain relief for a unilateral mistake, "such mistake must not be caused by that want of care and diligence which should be exercised by a person of ordinary care and prudence under the same or similar circumstances"); *see also United States v. Ames,* 99 U.S. 35, 25 L.Ed. 295 (1878) (relief in equity will not be granted if fraud, misrepresentation, or accident at issue might have been prevented by due diligence). In yet other cases, the New Mexico Supreme Court has held that relief can be granted for a negligent, unilateral mistake if equity so requires. *See, e.g., Crown Life Ins. Co.,* 112 N.M. at 638 (relief can be granted for negligent, unilateral mistake if enforcement of the contract will inflict on the party seeking rescission hardship out of all proportion to the value of the other party's justifiable expectation interest).

Under any of these standards, Defendants' position must fail. The disputed provision is unambiguous and was explicitly stated no less than a dozen times in the settlement

-12-

communications. Several times, Defendants' counsel stated that Defendants had reviewed, and agreed to, the disputed term. If Defendants made a mistake regarding the termination date of the agreement, it can only be because Defendants neglected to carefully read the correspondence and the draft settlements to which they agreed. There is no evidence that Plaintiff knew, or reasonably should have known, that Defendants did not understand that the Mesa Days Inn License Agreement was being extended until October 7, 2015--particularly when that date was specifically stated numerous times in the communications between the party. Plaintiff, who devoted many months to negotiating the settlement rather than litigating its claim, is prejudiced by Defendants' negligence.

Defendants complain that the settlement agreement is inequitable because extending the Mesa Days Inn License Agreement until October 7, 2015, results in payments to Plaintiff in excess of the amount Plaintiff originally proposed as an acceptable settlement amount for this case. While Defendants will be paying more in royalty fees than the amount Plaintiff originally suggested as sufficient to settle the case, Defendants will also be receiving benefits under the Mesa Days Inn License Agreement for this additional period, including the right to operate their guest lodging facility as a Days Inn. Under these circumstances, enforcement of the settlement agreement is not inequitable.

Plaintiff has requested its attorneys' fees and costs incurred in enforcing the settlement agreement. Under the "American Rule" governing respective financial burdens of litigating civil claims, the prevailing party is not entitled to collect attorney fees from the loser. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274 (1983). The Tenth Circuit recognizes a narrow exception to the American Rule, allowing a trial court to award attorney fees when a party's

-13-

opponent acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sterling Energy Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984).

An award of fees "requires more than merely a finding that a claim was frivolous when brought.... [T]he bad faith exception is drawn very narrowly and may be resorted to 'only in exceptional cases and for dominating reasons of justice.'" *Id*. at 1437 (quoting *Cornwall v. Robinson*, 654 F.2d 685, 687 (10th Cir. 1981)). While Defendants may have been neglectful, there is no evidence that Defendants acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." In the absence of such evidence, the Court will not award attorney's fees to Plaintiff.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff/Counter Defendant's Motion to Enforce Settlement Agreement, filed October 29, 2004, **[Doc. No. 65]** is **GRANTED**. Defendants are hereby ordered to comply with the provisions in the July 2004 settlement agreement executed by Travelodge with the modifications contained in Defendants' September 22, 2004 email other than those regarding paragraph 3. Defendants have thirty days from the date of this Order to make all payments due under the settlement agreement.

Dated this 26th day of July, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
    Tim Fields
    Janet Weinstein
    Amy Abdo

<u>Attorney for Defendants</u>:
    Josh Harris